ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL VII**

| | | |
|---|---|---|
| **ANIBELLE SLOAN ALTIERI YOHANNA DE JESÚS BERRÍOS Y ROLANDO ROMÁN PÉREZ** QUERELLANTE(S)-RECURRIDA(S) | | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente del **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)** |
| V. | **TA2025RA00102** | Caso Núm. **C-SAN-2024-0020372 C-SAN-2024-0020428** |
| **RAFAEL APONTE, DANIEL TORRE, CONSEJO DE TITULARES DEL CONDOMINIO PUERTO PASEOS Y ROGELIO MUÑOZ** QUERELLADA(S)-RECURRENTE(S) | | Sobre: Ley de Condominios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 14 de mayo de 2026.

Comparece ante este Tribunal de Apelaciones, el **CONSEJO DE TITULARES DEL CONDOMINIO PUERTO PASEOS (CONSEJO DE TITULARES)** mediante una *Solicitud de Revisión Judicial* incoada el 23 de julio de 2025. En su recurso, nos solicita la revisión de la *Notificación y Orden* emitida el 27 de mayo de 2025 por el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)**.[1] Mediante la referida decisión, se declaró ha lugar la *Moción Urgente de Paralización de Obras* presentada el 14 de mayo de 2025 por la señora **YOHANNA DE JESÚS BERRÍOS** (señora **DE JESÚS BERRÍOS**) y se le requirió al **CONSEJO DE TITULARES** la paralización inmediata de las obras relacionadas a la instalación y/o reemplazo del generador en el condominio. Además, se le apercibió que el incumplimiento podría conllevar la imposición de una multa administrativa de hasta $10,000.00 conforme al Artículo 69 de la Ley de Condominios.

---

[1] Este dictamen administrativo fue notificado y archivado en autos el 27 de mayo de 2025. Apéndice de la *Solicitud de Revisión Judicial*, págs. 227-228.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

– I –

El 24 de octubre de 2024, los señores **ANIBELLE SLOAN ALTIERI** (señora **SLOAN ALTIERI**) y Rolando Román Pérez instaron una *Querella* impugnando la asamblea extraordinaria celebrada el 24 de septiembre de 2024.[2] Exteriorizaron que, en dicha asamblea, se aprobó una derrama para una obra de mejora sin obtener el consentimiento unánime del Consejo de Titulares y el retiro de fondos de la cuenta de reserva para la adquisición e instalación de un segundo generador de energía eléctrica para suplir la demanda de servicio eléctrico en todas las áreas comunales y privativas del Condominio Puerto Paseos. Alegaron que las actuaciones de la Junta de Directores y los acuerdos alcanzados son contrarios a la Ley 129-2020, el Reglamento y Escritura Matriz. Por ello, suplicó se ordene el cese y desista de:

> (i) eliminar el área recreativa de juego de niños, para cambiar su destino y uso de este elemento común general con el propósito de ubicar una base de cemento, un segundo generador eléctrico y un segundo tanque de *diesel*; (ii) ubicar una segunda base de hormigón, un segundo generador eléctrico y un segundo tanque de *diesel* en el área recreativa de juego de niños, extremadamente cerca al edificio de apartamentos, en violación a normas y reglamentaciones ambientales, afectando a la parte querellante y otros titulares en su salud y en pleno uso y disfrute de su apartamento; (iii) imponer una derrama para una obra de mejora sin haber requerido, no haber obtenido, no haber cumplido con el requisito de unanimidad para su aprobación; y (iv) retirar dinero de la cuenta de reserva del Consejo de Titulares, incluyendo el retiro de los $100,000.00 adicionales que no formaron parte de la Convocatoria ni de la agenda circulada.

Posteriormente, el 19 de noviembre de 2024, la señora **YOHANNA DE JESÚS BERRÍOS** (señora **JESÚS BERRÍOS**) entabló una *Querella* impugnando la misma asamblea extraordinaria.[3]

Más tarde, el 3 de febrero de 2025, el **CONSEJO DE TITULARES** presentó su *Contestación a Querella* en el caso C-SAN-2024-0020372.[4] Sustentó, entre otros, que con la aprobación de la Ley 129-2020 la adquisición de un generador de energía eléctrica que supla la demanda de áreas comunes, o comunes y privadas, haciendo

---

[2] El numero asignado a la *Querella* es: C-SAN-2024-0020428. Apéndice de la *Solicitud de Revisión Judicial*, págs. 1-14.
[3] El numero asignado a la *Querella* es: C-SAN-2024-0020372. Apéndice de la *Solicitud de Revisión Judicial*, págs. 15-19.
[4] Apéndice de la *Solicitud de Revisión Judicial*, págs. 20-44.

uso de infraestructura eléctrica del condominio, es un elemento común general necesario, y su adquisición no se puede considerar como una obra de mejora; y en el área en donde se colocaría el generador no contiene limitación especifica de uso o destino en la Escritura Matriz.

El 18 de febrero de 2025, la señora **JESÚS BERRÍOS** presentó una *Querella Enmendada* arguyendo que el proyecto del generador es una alteración a la construcción actual del complejo que requiere la obtención de permisos de las agencias pertinentes. También, esta alteración es contraria a los planos existentes, no surge de la escritura matriz ni del Reglamento.[5]

El 25 de febrero de 2025, señora **SLOAN ALTIERI** presentó una *Moción Solicitando Consolidación* de las querellas.

Después, el 10 de marzo de 2025, en el caso: C-SAN-2024-0020372, el **CONSEJO DE TITULARES** presentó su *Contestación a Querella Enmendada*.[6] Así, el 20 de marzo de 2025, se dictaminó *Orden* sobre la consolidación de las *Querellas*.[7]

Seguidamente, el 14 de mayo de 2025, el **CONSEJO DE TITULARES** presentó *Moción Solicitando Resolución Sumaria de la Querella* C-SAN-2024-0020372.[8] En la misma fecha, la señora **JESÚS BERRÍOS** presentó *Moción Urgente de Paralización de Obras.*[9] Ese día, el **CONSEJO DE TITULARES** presentó *Oposición a Moción Urgente de Paralización de Obra*.[10] Al poco tiempo, el 22 de mayo de 2025, se celebró una audiencia.[11] Ante ello, el 27 de mayo de 2025, se emitió la *Orden* recurrida.

Inconforme, el 11 de junio de 2025, el **CONSEJO DE TITULARES** presentó su *Moción Solicitando Reconsideración de Orden de Paralización*.[12] El 24 de junio de 2025, la señora **JESÚS BERRÍOS** presentó *Oposición a Solicitud de Sentencia Sumaria y Solicitud de Sentencia Sumaria a Favor de la Querellante.* A los pocos días, el 27 de junio de 2025, el **CONSEJO DE TITULARES** presentó una *Moción Solicitando Resolución Sumaria de la Querella C-SAN-2024-0020428.*

---

[5] *Íd.*, págs. 45-51.
[6] *Íd.*, págs. 52-81.
[7] *Íd.*, págs. 82-83.
[8] Apéndice de la *Solicitud de Revisión Judicial*, págs. 99-212.
[9] *Íd.*, págs. 213-214.
[10] *Íd.*, págs. 215-223.
[11] Apéndice de la *Solicitud de Revisión Judicial*, págs. 224-226.
[12] *Íd.*, págs. 229-249.

A continuación, el 3 de julio de 2025, el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)** expidió su *Notificación y Orden* determinando no ha lugar el petitorio de reconsideración y manteniendo vigente la orden de paralización hasta que se adjudicara la controversia.[13]

Aun en desacuerdo, el día 23 de julio de 2025, el **CONSEJO DE TITULARES** recurrió mediante *Solicitud de Revisión Judicial* y *Moción en Auxilio de Jurisdicción* ante este foro intermedio En su escrito, señala el(los) siguiente(s) error(es):

> Erró el DACo al emitir la orden provisional de paralización sin celebrar una vista conforme lo requiere el Artículo 13 de su Ley Habilitadora, y la Regla 25 del Reglamento Núm. 8034.

> Erró el DACo al emitir la orden provisional de paralización sin evaluar evidencia ni considerar los requisitos que nuestro ordenamiento jurídico impone para que un foro pueda aquilatar si procede un remedio provisional.

En aquel momento, pronunciamos *Resolución* en la cual se proveyó no ha lugar la petitoria de auxilio de jurisdicción, así como concedimos un plazo de treinta (30) días para presentar su alegato en oposición al recurso. Transcurrido algún tiempo, el 20 de agosto de 2025, la señora **JESÚS BERRÍOS** presentó *Oposición a Revisión Judicial.* El 27 de agosto de 2025, la señora **SLOAN ALTIERI** presentó su *Moción para Unirnos al Alegato de la Parte Querellante*.

Finalmente, el 22 de diciembre de 2025, el **CONSEJO DE TITULARES** presentó *Moción Informando Resolución Adjudicativa del DACo* anexando copia de *Resolución* del **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO).**

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

---

[13] *Íd.*, págs.250-251. Los procedimientos ante el foro administrativo continuaron: el 8 de agosto de 2025, el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)** pautó audiencia para el 18 de septiembre de 2025. En dicha audiencia, el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)** expresó que a base de los escritos no existía una controversia esencial de hechos, por lo que podría disponer de las *Querellas* de manera sumaria. El 29 de septiembre de 2025, señora **SLOAN ALTIERI** presentó *Oposición a la Solicitud de Resolución Sumaria de la Parte Querellada y Solicitud de Resolución Sumaria a Favor de la Parte Querellante.* Luego de haber escuchado las partes y examinar los expedientes, el oficial examinador formuló sus determinaciones de hechos en su *Resolución* dictaminada el 18 de diciembre de 2025.

– II –

### - A - *JURISDICCIÓN*

La *jurisdicción* es el poder o autoridad que tiene un tribunal para considerar y decidir los casos y controversias.[14] En consecuencia, la falta de *jurisdicción* de un tribunal incide directamente sobre su poder para adjudicar una polémica.[15] Es por ello, que los tribunales deben ser celosos guardianes de su *jurisdicción* dado que los asuntos relacionados con esta son privilegiados y deben atenderse con prioridad.[16]

Aun en ausencia de un señalamiento por alguna de las partes, la falta de *jurisdicción* puede ser considerada *motu proprio* por los tribunales. Por tratarse de una cuestión de umbral en todo procedimiento judicial, si un tribunal determina que carece de *jurisdicción* solo resta así declararlo y desestimar la reclamación inmediatamente, sin entrar en los méritos de la controversia, conforme lo ordenado por las leyes y reglamentos para el perfeccionamiento del recurso en cuestión.[17]

La ausencia de *jurisdicción*, por tanto, acarrea las siguientes consecuencias: priva a un foro judicial del poder necesario para adjudicar una controversia; los tribunales no poseen discreción para asumirla cuando no la tienen; no es susceptible de ser subsanada; las partes no pueden conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; conlleva la nulidad de los dictámenes emitidos; se impone a los tribunales el ineludible deber de auscultar su propia *jurisdicción* —y a los tribunales apelativos la obligación de examinar la *jurisdicción* del foro de donde procede el recurso—; las cuestiones jurisdiccionales deben ser resueltas con preferencia sobre otros asuntos, y su alegación puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*.[18]

---

[14] *Municipio de Aguada v. W. Construction, LLC y otro,* 2024 TSPR 69; *FCPR v. ELA et al.,* 211 DPR 521 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384, 394 (2022).
[15] *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374, 385 (2020).
[16] *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 267- 268 (2018).
[17] *FCPR v. ELA et al., supra; Cobra Acquisitions v. Mun. Yabucoa et al., supra; Allied Mgmt. Group v. Oriental Bank, supra,* págs. 386- 387; *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 501 (2019).
[18] *MCS Advantage v. Fossas Blanco et al.,* 211 DPR 135 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al., supra,* pág. 395; *Allied Mgmt. Group v. Oriental Bank, supra,* págs. 386- 387; *Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 101-102 (2020).

Un recurso presentado antes del tiempo correspondiente (prematuro), al igual que el presentado luego del plazo aplicable (tardío), *"sencillamente adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre".*[19] En ambos casos, su presentación carece de eficacia y no produce ningún efecto jurídico.[20]

La doctrina jurídica de *justiciabilidad* limita la intervención de los tribunales a aquellos casos en que exista una controversia genuina surgida entre partes opuestas que tengan un interés real en obtener un remedio.[21] Este principio constituye una autolimitación al ejercicio del Poder Judicial de arraigo constitucional y persigue el fin de evitar que se obtenga un fallo sobre una controversia inexistente, una determinación de un derecho antes de que el mismo sea reclamado o una sentencia en referencia a un asunto que, al momento de ser emitida, no tendría efectos prácticos sobre la cuestión sometida.[22] No se consideran controversias justiciables aquellas en que: 1) se procura resolver una cuestión política; 2) una de las partes carece de legitimación activa; 3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; 4) las partes están tratando de obtener una opinión consultiva, o; (5) se intenta promover un pleito que no está maduro.[23] Así pues, el ejercicio válido del poder judicial sólo se justifica si media la existencia de una controversia real y sustancial.[24]

La *academicidad* es una manifestación de la doctrina de *justiciabilidad*. Un caso es *académico* cuando se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que este haya sido reclamado o una sentencia sobre un asunto que, al dictarse, por alguna razón, no tendrá efectos prácticos sobre una controversia existente.[25] Como regla general, un caso es *académico* "cuando ocurren cambios durante el trámite judicial de una controversia particular que hacen que ésta pierda su actualidad, de

---

[19] *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 269 (2018); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873 (2007).

[20] *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97 (2008); *S.L.G. Szendrey-Ramos v. F. Castillo, supra.*

[21] *Ramos, Méndez v. García García,* 203 DPR 379, 393-394 (2019).

[22] *San Gerónimo Caribe Proyect v. ARPE,* 174 DPR 640 (2008).

[23] *Íd.*

[24] *Ortiz v. Panel FEI,* 155 DPR 219 (2001).

[25] *Amador Roberts et als. v. ELA,* 191 DPR 268, 282 (2014).

modo que el remedio que pueda dictar el tribunal no ha de llegar a tener efecto real alguno en cuanto a esa controversia".[26]

La Regla 83 (C) del Reglamento del Tribunal de Apelaciones faculta a este Tribunal para que, a iniciativa propia, desestime un recurso de apelación o deniegue un auto discrecional por cualquiera de los motivos consignados en el inciso (B).[27] Una vez un tribunal determina que no tiene *jurisdicción*, "procede la inmediata desestimación del recurso apelativo conforme lo ordenado por las leyes y los reglamentos para el perfeccionamiento de estos recursos". [28]

– III –

Justipreciado el expediente ante nuestra consideración, atisbamos que el pasado 18 de diciembre, notificada el mismo día, el DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO) decretó una *Resolución* desestimando las *Querellas,* y ordenando el cierre y archivo de estas.[29]

Ante el hecho de que se ha resuelto el litigio sobre el generador de energía eléctrica, se han quedado sin efecto los señalamientos o fallos recurridos ante nuestra consideración; por lo que, colegimos que se ha tornado ***académica*** la *Solicitud de Revisión Judicial* interpuesta el 23 de julio de 2025, ello aun cuando el(los) error(es) pudo(pudieron) haber sido justiciable(s) en un inicio. En consecuencia, los hechos medulares han cambiado; y hay una ausencia de controversia genuina entre las partes. Por ende, carecemos de *jurisdicción* para atender este recurso.

---

[26] *Bhatia Gautier v. Gobernador*, 199 DPR 59 (2017).

[27] Véase la Regla 83, sobre *desistimiento y desestimación*, del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, págs. 116-117, 216 DPR ____ (2025). Dicho inciso lee: *"(B) Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes: (1) que el Tribunal de Apelaciones carece de jurisdicción; (2) que el recurso fue presentado fuera del término de cumplimiento estricto dispuesto por ley sin que exista justa causa para ello; (3) que no se ha presentado o proseguido con diligencia o de buena fe; (4) que el recurso es frívolo y surge claramente que no se ha presentado una controversia sustancial o que ha sido interpuesto para demorar los procedimientos, o (5) que el **recurso se ha convertido en académico**"*.

[28] *Allied Mgmt. Group v. Oriental Bank, supra*, pág. 385.

[29] Apuntaló que: "[c]onforme a la evidencia que obra en el expediente, el querellado Consejo de Titulares cumplió con los requisitos de la Ley 129-2020, supra, para convocar y celebrara una asamblea, y acordar adquirir un nuevo generador de energía eléctrica, como elemento común necesario del Condominio, para suplir la demanda energética de áreas comunes y privadas del Condominio. Procede decretar la desestimación de ambas querellas y ordenar el cierre y archivo de las mismas".

– **IV** –

Por los fundamentos antes expuestos y en conformidad con la Regla 83 (C) del *Reglamento del Tribunal de Apelaciones*, **desestimamos,** por **academicidad,** la *Solicitud de Revisión Administrativa* instada el 23 de julio de 2025 por **Consejo de Titulares del Condominio Puerto Paseos;** y ordenamos el cierre y archivo del presente caso.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal, y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones